


# EXHIBIT D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAN SWETIC,

    Plaintiff,

v.                                                                                  Case No.: 8:10-cv-02096

SILVERBERG JEWLERY COMPANY,

    Defendant.
_____/

## PLAINTIFF'S EXPERT FEE REPORT

On behalf of Plaintiff, Jan Swetic, and his attorney Richard Celler, Esq., the undersigned, having reviewed the file pleadings, correspondence, timesheets, costs statement and having furthis considered the nature of the complaint as well as the Act upon which the complaint was based as well as Defendant's considerable responses, hiseby opines as follows:

### Introduction

1. The undersigned limits his practice and that of his law firm to primarily the area of labor and employment law, and as a result, has developed extensive expertise, in the field of labor and employment law.

2. The undersigned has actively practiced before both State and Federal tribunals related to labor, employment and injury matters connected with employment and wage disputes. The undersigned has actively represented displaced workers in administrative matters and also trials. W. John Gadd, Esq., has practiced labor and employment law extensively since 2001. W. John Gadd, Esq., has tried numerous administrative law cases, including cases before the Department of Defense, Division of Workers'

1

Compensation as well as both Federal and State tribunals regarding esoteric matters arising from employment based fact patterns. The undersigned counsel is admitted to practice before the U.S. District Court for the Middle District of Florida, the U.S. District Court of Colorado and all state courts in Florida. Accordingly, W. John Gadd, Esq., is familiar with a variety of employment based statutes, including the Fair Labor Standards Act, upon which the underlying claim was brought.

3. Having had an opportunity to review the file pleadings, correspondence, timesheets, attorney time records and cost statements and having further considered the nature of the complaint as well as the Act upon which the compliant was based as well as Defendant's considerable responses, it is immediately notably, that Attorney Celler, and the law firm of Morgan and Morgan, undertook the representation of Plaintiff under particularly trying circumstances.

4. Specifically, upon presenting to the office of Attorney Celler, Plaintiff had little in the way of documentation or evidentiary support for his claim. In essence, all Plaintiff had to support his allegations of underpayment/misclassification were Plaintiff's recollection and first hand knowledge of the approximate hours he worked without being properly compensated by Defendant as well as the particulars of Plaintiff's underlying job duties.

5. As in the majority of FLSA cases, the employer is almost always in exclusive possession and/or control of the most relevant employment related records, including payroll related records, the latter of which are often highly suspect or otherwise compromised by an employer's refusal to accurately record the correct number of hours worked or, in many situations, the employer has embarked on a dubious and unfounded

effort to attach an "exempt" label on any workers who routinely work in excess of forty hours during any given week in order to avoid paying overtime and save the employer significant labor costs at the direct expense of the employee. It is this behavior that gives rise to the claims such as the matter at bar, while Plaintiff was simply labeled "exempt" under highly questionable circumstances. And, while it appears Defendant maintained limited time records for Plaintiff, it inexplicably did not have the majority of time records to produce regarding Plaintiff's employment. This conclusion is based upon my review of email correspondence and discovery from the file.

6. Accordingly, in this underlying matter, Attorney Celler and the law firm of Morgan and Morgan took significant risks by investing both considerable time and financial resources into this case on a contingency basis, knowing the case would have far from a certain outcome and also knowing that this particular case would likely turn upon the more esoteric aspects of the FLSA and, in particular, the many nuances of the administrative exemption and, in essence, a proverbial "he said/they said" battle regarding the Plaintiff's actual job duties.

7. In most forms of civil litigation, this is ample room for reasonable minds to disagree. However, in relatively straightforward FLSA cases, while the underlying amount of wages in dispute are relatively modest, the approach to the litigation must be handled with care by both parties as prolonged litigation is nearly certain to create defense related costs that far outweigh the underlying value of the wages and liquidated damages in dispute.

8. With respect to FLSA litigation, this is an unavoidable symbiotic relationship between the defensive handling of the case and the prosecution of the claim. What

normally begins as a relatively straightforward civil claim for a modest amount of wages can be stymied and prolonged by the nature and scope of the defense of the claim. Otherwise stated, the longer a case remains active and open on the docket and the more maneuvering required to prove up the case and move the matter forward, the greater the amount of attorney time is required.

9. Such a paradigm is of great importance in the matter at bar because, throughout the entirety of this litigation, Defendants steadfastly contested all allegations brought by Plaintiff. This case was a complete controvert in nearly every sense of the word. When evaluating the reasonableness of attorney time and effort expended by Attorney Celler it must be noted that, in response to a one count FLSA complaint, Defendant filed an answer not only denying most of the material allegations of the complaint but also raising no less than fourteen affirmative defenses, all of which had to be considered and addressed and otherwise factored into the strategic handling of the case. With a noteworthy nod to professional courtesy and responsible litigation, Attorney Celler expeditiously communicated with Defense counsel on October 7, 2010 (just weeks after the case was filed) in order to get to the proverbial "heart of the matter" by detailing the extensive factual allegations upon which Plaintiff relied for his contention that Plaintiff could not possibly be an exempt employee. Nonetheless, the case persisted for an additional eight months upon as an active litigation file as Defendants continued to dispute the claim.

10. The Plaintiff in this case, who is a person of modest means, was and is unable to pay either his attorney fees or costs. Plaintiff is not, and was not, financially prepared for the extensive litigation efforts necessary to overcome or significantly challenge a

4

completely controverted case on an hourly basis. Attorney Celler and Morgan and Morgan incurred substantial financial risk in representing Plaintiff because he agreed to undertake representation of Plaintiff without any assurance of compensation unless the undersigned was successful in challenging or overcoming Defendant significant denial of the claim. Obviously, any attorney fee payment which the undersigned attorney may receive was totally contingent upon successful prosecution of Defendant case and the amount of attorney fees awarded by the Court and payment by the Defendant.

11. Defendant was represented by Jason A. Collier, Esq., as well as Jennifer B. Compton, Esq. both of whom are sophisticated defense attorneys who have developed a considerable reputation as a result of their vast experience and expertise in the defense of FLSA matters. Opposing such accomplished adversaries, who are supported by a virtually unlimited defense budget is indeed a daunting task. In addition, the underlying matter raised numerous complex issues arising out of the prosecution of this action, to which Attorney Celler had to respond. Accordingly, Defendant's unique, learned and seemingly overwhelming challenge to every aspect of Plaintiff's claim caused counsel for Plaintiff to spend considerable time contemplating the many issues raised by Defendant and reviewing the evidence. Likewise, because of the broad scope of the challenges presented, substantial time and effort went into every aspect of this claim, even down to the completion of a detailed spreadsheet for the purposes of unpaid wage related calculations. Moreover, Attorney Celler fully participated in issuing specific discovery, including the securing of depositions and settlement discussions, events that were paramount to the development of Plaintiff's case in order to reasonably carry Plaintiff's burden of proof and likewise overcome the challenges of Defendants.

12. The controlling legal principals suggest that attorneys in cases such as these are most recently compensated by determining the "lodestar", that being the sum of the hours reasonably expended on the case, multiplied by a reasonable hourly rate, i.e. the "market rate" as determined by this Court. See, *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1151 (Fla. 1985), and then to apply the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974) to determine if enhancement of the fee award is appropriate. The office of the undersigned regards the underlying matter of a "fair days work for a fair days pay" as one of public policy as the unlawful denial of claims by for proper wages must surely be antithetical to public policy as evidence by the Act. While the Act involved in this present matter is admittedly not a state law claim, the method used to determine the fee award in public policy enforcement cases pursuant to a fee-shifting statute was set out by the Florida Supreme Court in *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So.2d 828 (Fla. 1990) at 833-834. See also, Rule 4-1.5, Rules Regulation The Florida Bar. The Florida Supreme Court based its decision upon U.S. Supreme Court and othis federal decisions. Applying the facts of this case to the standards in *Johnson v. Georgia Highway Express, Inc.*, counsel states as follows:

**a. The time and labor required**: Employment based litigation, including the FLSA and the many particulars and exemptions that it entails, is undoubtedly one of the more demanding areas of a lawyer's practice. This is especially true while, as in this case, Defendants had challenged Plaintiff's allegations and legal standing from nearly every conceivable angle. Considering that this case was essentially disputed in its entirety, Attorney Celler was compelled to present the case and all relevant facts clearly

and succinctly, while analyzing and presenting numerous facts, statements and points of law, knowing that experienced federal judges would be reviewing every aspect of the case and scrutinizing Plaintiff's allegations. Such litigation skill exacts a high standard of attention to detail and skilful presentation of argument, the facts and the law.

Statistical information: The hours expended on this case exceed 55.87 professional hours (prior to the preparation and filing of Plaintiff's fee petition). The motions, pleadings, and other documents filed or otherwise generated or produced as a result of this matter would essentially fill an entire red-well file. Plaintiff's pleading log on this case reflects the filing of numerous separate documents regarding material aspects of the case and the attorney timesheet is set forth with clear and consistent manner, detailing the legal work performed.

**b. The novelty and difficulty of the questions**: This case presented a number of novel and difficult questions which were raised by the Defendants, as evidenced by Defendant's fourteen affirmative defenses.

**c. The skill requisite to perform the legal service properly**: The skill is evident in the extraordinary result obtained on behalf of Plaintiff in this case since this matter was completely controverted from nearly every conceivable angle and defended by extremely zealous and experienced attorneys who brought with them the full support and backing of one of Florida's highly successful and well known defense firms.

**d. The preclusion of this employment by the attorneys due to acceptance of the case**: The time constraints imposed by heavy time requirements connected with the successful prosecution of this matter precluded this attorney from extensive involvement with other clients. Had this case not been essentially completely

7

controverted, it is reasonable to conclude that such an extensive expenditure of time would not have been necessary. However, in this case, when faced with the significant arguments of experienced defense attorneys regarding issues of jurisdiction, notice, causation etc., no stone could have been left unturned. Extensive preparation was required for the scheduled depositions as well as the review of employment based records which required a high degree of attention to detail with respect to every word as each statement was subjected to intense and extensive scrutiny by the Defendant.

**e. The customary fee:** This Court ought to award a total of $16,525.25 in fees and $3,219.01 in costs to the law office of Attorney Celler (plus such additional time as will be incurred in the preparation and filing of Plaintiff's fee petition) for the work completed, and to be completed, by Attorney Celler on behalf of Plaintiff.

**f. Was the fee is fixed or contingent:** The receipt of any fee by counsel for Plaintiff was entirely contingent upon success of the prosecution of the matter. Thus, prosecuting this matter was a high risk undertaking for Plaintiff's counsel. There were certainly no facts or documentation presented to the office of the undersigned in support of Plaintiff claims when the undersigned obligated himself to become the attorney of record and represent Plaintiff. Indeed, the undersigned began with little more than a story presented by an earnest appearing laborer.

**g. Time limitations imposed by the client or the circumstances:** Employment law cases, including FLSA cases must be handled with diligence and care. In cases such as the matter at hand, a claimant's livelihood and perspective on life has been altered. Plaintiffs in these situations are continually challenged with respect to balancing the aftermath of job loss and the uncertain hopes of getting paid for the work

8

they have long since completed for the benefit of their employer. These situations are further complicated by a Defendant's complete controvert of their claims. Such a controverted case reeks havoc with an unemployed employee who must deal not only with the aftermath of an job loss, but also the betrayal of an employer who has long benefited and prospered as a result of said employee's labor. Time becomes an increasingly valued commodity and the need to have access to legal representation that will expeditiously follow all leads and explore all avenues of evidentiary support is greatest when an displaced worker who has previously provided for his family without fail faces a prolonged period of non-productivity on account of an expected separation from his employment. This creates burdensome time constraints and extensive time commitments as such clients require routine guidance and consultations and accordingly must be handled with care and expertise. The numerous issues raised by Defendant required extensive research and factual development in effort to properly litigate this matter.

**h. The amount involved and the results obtained**: Ultimately, after a hard fought period of contested litigation, the result for Plaintiff was no less than full unpaid and liquidated damages. Considering that Claimant began with little or no evidence in support of his claim and that said claim required considerable development from every angle in order to carry Claimant's burden, it is most certain that Claimant would have recovered nothing but for the time, expertise and dedication of the office of Attorney Celler. Said claim would almost certainly have been left under developed had said case been handled with a mass volume mindset as opposed to the personal and dedicated attention said claim received by Attorney Celler.

**i. The experience, reputation, and ability of the attorneys**: Attorney Celler has practiced labor and employment law extensively since 1999. Attorney Celler has tried numerous employment based cases, including cases both Federal and State tribunals regarding esoteric matters arising from employment based fact patterns. Attorney Celler is admitted to practice before the U.S. District Court for the Middle District of Florida, and all state courts in Florida.

**j. The "undesirability" of the case**: FLSA cases are well known to Florida, however, due to the complexity of the underlying Act as well as the contingency fee nature of these cases and the Plaintiff's inability to pay for legal services, "misclassification" claims are generally considered the more difficult to pursue and thisefore the least desirable. Further, completely controverted cases are more difficult to handle because typically it is the Plaintiff who generally is forced to stand alone with all the other witnesses being employees of the defendant employer, who also possesses all the documents. Plaintiff's counsel takes on considerable risk in pursuing this type of case which is exacerbated by the fact, as has been demonstrated in this case, that employer/carriers spare no expense and no effort to defend such a case, and who, as a matter of practice, show little or no inclination to settle or resolve disputes until considerable effort is expended on the part of a claimant's attorney.

**k. The nature and length of the professional relationship with the client**: The undersigned has represented Plaintiff on a contingency basis since approximately August 2010, when he first accepted the case. Morgan and Morgan has expended significant time and fronted costs for the litigation, without recovering either to date.

10

**l. Awards in similar cases:** Considering the extensive litigation in this case as well as the fact that Plaintiff's case was largely prepared for trial and that Attorney Celler had been incredibly diligent regarding the marshalling of evidentiary support, the quantum of hours expended is patently reasonable. Likewise, the rate sought by Attorney Celler is well with the norms of the profession.

The undersigned submits that based upon the factors in *Johnson v. Georgia Highway Express, supra,* that an attorney fee award of $16.525.25 for Attorney Celler's time of 55.87 hours and associated costs (prior to preparing and filing Plaintiff's fee petition). Said award would equate to an hourly rate of $295.78. An award of this amount would reasonably reflect the prevailing "market rate" for attorneys undertaking representation of clients in matters such as the one at hand. The "market rate" is that rate charged in the community by lawyers of reasonably comparable skill, experience and reputation, for similar services. *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1151 (Fla. 1985). These hourly rates, multiplied by the hours reasonably and necessarily expended in representing the interests of Plaintiff on this appeal produce the "lodestar" which initially forms the basis for the amount of attorney fees to be awarded. *Florida Patient's Compensation Fund v. Rowe, supra.* Notably, Attorney Celler is not seeking an enhancement, which is further reflective of his expeditious and efficient handling of the underlying claim. An award of the attorney fees and costs sought by Attorney Celler would be completely reasonable and within the norms of the profession considering the fact of this case and the challenges presented as well as the result obtained.

I hereby declare that the above declaration is made under oath and penalty of perjury.

Respectfully submitted this 13th day of June 2011,

_____
W. John Gadd